# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DARRYL P. BENSON,**
                **Petitioner,**

**v.**                                                    **Case No. 16-C-0475**

**REED RICHARDSON, Warden,**
                **Respondent.**

---

## DECISION AND ORDER

Following a three-day jury trial in a Wisconsin state court, Darryl Benson was convicted of three counts of first-degree sexual assault of a child. He was sentenced to three consecutive ten-year sentences, with six years of initial confinement and four years of extended supervision on each count. Before me now is Benson's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

On March 4, 2009, the State of Wisconsin filed a criminal complaint against Benson. The complaint alleged that, between February 12, 2009 and February 28, 2009, Benson had sexual contact with his eleven-year-old stepdaughter, S.W. The complaint alleged one count of first-degree sexual assault of a child, in violation of Wis. Stat. § 948.02(1)(e). On March 24, 2009, the state filed an information charging Benson with this offense. *See* ECF No. 10-2, p. 60 of 143. The case was tried to a jury in June 2009.

Shortly before trial, the state filed an amended information. *See* ECF No. 10-2 at pp. 61–62. The amended information charged Benson with four counts of first-degree sexual assault of a child. Count 1 alleged that Benson had "sexual contact" with S.W. at

their home on February 12, 2009. Count 2 alleged that Benson had "sexual intercourse" with S.W. at their home on February 12, 2009. Count 3 alleged that Benson had "sexual contact" with S.W. in his car "between February 12, 2009, and March 2, 2009." Count 4 alleged that Benson again had "sexual contact" with S.W. at their home "after February 12, 2009, but before March 2, 2009."

On the first day of trial, the court and counsel discussed the amended information. *See* Tr. of Jury Trial, Vol. 1, at 2. The prosecutor explained that the amended information was based on facts testified to by S.W. at the preliminary hearing, and that therefore the defendant had adequate notice of the additional charges. *Id.* at 3. Benson's counsel agreed that the defense had "received notice that the State, if this matter proceeded to trial, would be filing an amended information." *Id.* Defense counsel therefore did not object to the amended information based on inadequate notice. However, defense counsel pointed out that Counts 3 and 4 of the amended information alleged that the sexual assaults occurred as late as March 2, 2009, yet Benson was arrested on February 28th and thus could not have committed the alleged crimes after that date. *Id.* at 3–4. The prosecutor responded as follows:

> [Count 3 of the amended information] states the above-named defendant, between February 12th and I have March 2nd. When I read that, to me "between" means you start on February 13th and end on March 1st and that's why I took days on the outside and everything is in between.
>
> It should be March 1st, it's between those dates, that way February 28th would be included in between. So it's probably correct to amend it from March 2nd to March 1st, 2009, and that applies to Count 4 because it states the above-named defendant after February 12th, which means we would be starting on February 13th but before March 1st, which would include February 28th, that's how I came to those time periods.

*Id.* at 4–5. After some additional discussion about these dates, the court stated that it would "amend Counts 3 and 4 of the amended information to indicate February 12th,

2009, but before February 28th, 2009." *Id.* at 6. Both the prosecutor and defense counsel agreed to the court's oral amendment of the amended information.[1] *Id.* at 6–7.

When the trial began and the jurors first entered the courtroom, the court read the amended information to the jury. When the court read Count 3, it told the jury that the count alleged that "between February 12, 2009, and February 28, 2009," Benson had sexual contact with S.W. in his car. *Id.* at 22. As to Count 4, the court stated that it alleged that "after February 12, 2009, but before February 28th, 2009," Benson had sexual contact with S.W. at their home. *Id.* at 22–23.

During the trial, S.W. testified that Benson sexually assaulted her a number of times.[2] She testified that the first assault occurred at home at about 2:00 a.m. on February 12, 2009. Tr. Vol. 3 at 24–26. S.W. testified that, while she was in the kitchen, Benson "put his penis in [her] butt." *Id.* at 32. Follow-up questions established that by "butt," S.W. meant her anus. *Id.* at 34. She testified that "when he was done with that he put his penis in [her] mouth." *Id.* at 36. She testified that Benson also touched her breast and her butt with his hands while they were in the kitchen. *Id.* at 40. She testified that Benson then put his penis in her butt a second time. *Id.* at 41. S.W.

---

[1] The federal habeas record does not contain any document with the caption "second amended information" or any other document, besides the trial transcript, reflecting the court's amendment to the amended information on the first day of trial. However, the Wisconsin Court of Appeals, in its opinion in Benson's state collateral attack on his conviction, seems to quote from a second amended information. *See* Opinion of Sep. 29, 2015, at 3. But the court does not cite the source of its quotation, and I am not sure what it is referring to.

[2] S.W. has a hearing impairment and testified through interpreters using American Sign Language. However, S.W. is not completely deaf and can hear and speak to some extent.

testified that after all of this she went upstairs to her bedroom, and then Benson came in and licked her vagina. *Id.* at 40–42.

S.W. also testified that, on multiple occasions after February 12, 2009, Benson sexually assaulted her while they were in Benson's car. *Id.* at 25, 47. S.W. testified that, in the car, Benson would force her to touch his penis, and that he would touch her vagina, breast, and butt. *Id.* at 47, 52. She also testified that, on one occasion, Benson pulled the car over and forced her to put his penis in her mouth. *Id.* at 51. S.W. could not remember the specific dates on which each of these assaults in the car occurred. *Id.* at 48.

S.W. next testified about additional sexual assaults that occurred in the home after February 12, 2009. *Id.* at 54. Initially, S.W. testified that only one assault occurred in the home after February 12, 2009, and that she could not remember the date on which it occurred. *Id.* at 54–55. She testified that this assault consisted of Benson's touching her butt with his penis over her clothes and also touching her breasts over her clothes. *Id.* at 55–57. However, later in her testimony, S.W. stated that Benson made "oral and anal contact" with her at their home six or seven times after February 12, 2009, with each contact occurring on a different day. Tr. Vol. 4 at 66–67.

S.W.'s mother, Sonya, also testified at the trial. Sonya testified that she learned about Benson's abuse of her daughter on February 27, 2009. That night, Sonya sent Benson to pick up food from a fast-food restaurant in his car, and S.W. went with him. After Benson and S.W. left, Sonya received an apparent "pocket dial" call from Benson's cellular phone. When Sonya picked up her phone, she heard Benson telling someone that she "was going to love fucking daddy's big black dick, that she was going

to love sucking daddy's big black dick because your mama ain't fucking me." *Id.* at 12–16.  Sonya believed that Benson was talking to S.W. and immediately went to find them.[3]  When she found them, Sonya removed S.W. from Benson's car and questioned her about what had happened.  S.W. then told her mother that Benson had repeatedly sexually assaulted her.  *Id.* at 20–22.

Benson testified at the trial in his own defense.  He denied making any form of sexual contact with S.W.  He claimed that the phone call his wife received was not a pocket dial.  Rather, Benson stated that he intentionally called his wife and that the sexually explicit comments she heard were directed towards her, but she was too drunk and high on marijuana to realize that he was talking to her.  Benson testified that although S.W. was in the car, S.W. could not hear him make these comments to his wife because she was listening to music through headphones.  Tr. Vol. 6 at 68–69.

Before closing arguments, the court instructed the jury on the elements of the offenses.[4]  Because Benson was charged in three counts with making "sexual contact" with a child and one count of having "sexual intercourse" with a child, the court defined both of these terms for the jury:

> Sexual contact is an intentional touching of the breasts an[d] anus of [S.W.] by the defendant and/or the defendant intentionally caused or allowed [S.W.] to touch his penis.  The touching may be of the breasts, anus, or penis directly, or it may be through the clothing.  The touching may be done by any body part or by any object, but it must be an intentional touching.  Sexual contact also requires that the defendant acted with the intent to become sexually aroused or gratified.
>
> . . . .

---

[3] As noted above, although S.W. has a hearing impairment, she is not completely deaf. This explains why Sonya could think that Benson was talking to S.W.

[4] The court gave similar instructions before opening statements.  *See* Tr. Vol. 2 at 35–37.

Sexual intercourse means any intrusion, however slight, by any part of a person's body or of any object into the genital or anal opening of another. Emission of semen is not required.

Tr. Vol. 6 at 92–93.

The court also instructed the jurors on unanimity:

The defendant is charged with four counts of sexual assault. However, evidence has been introduced of more than one act, any one of which may constitute sexual contact or intercourse.

Before you may return a verdict of guilty, all twelve jurors must be satisfied beyond a reasonable doubt that the defendant committed the same acts and that the acts constituted the crime charged.

*Id.* at 93–94.

Towards the beginning of his closing argument, the prosecutor provided the jury with an overview of the charges:

He's charged with four crimes, four separate crimes. And here are the crimes. Count one charges him, but the lable is first degree sexual assault. He is charged with having sexual contact with [S.W.] on February 12th of this year at their home.

Count two charges him with the same label, first degree sexual assault. But rather than contact, he's charged with having sexual intercourse, again, with [S.W.] at their home . . . .

Count three is different. Count three charges him with having sexual contact with [S.W.] in a car, after February 12th and before February 28th, a period of time.

Count four is also different. It's the same label, first degree sexual assault, but it charges him with having sexual contact with [S.W.] at their home, but not on February 12th, between the period of time after February 12th and before February 28th when he was arrested.

That's why there are four charges. Because as she says, this happening started on February 12th involving sexual contact intercourse [sic], and then there was other stuff in the car and other times at home. That's why there are four charges.

*Id.* at 99–100.

After closing arguments, the court read the verdict forms to the jury.  *Id.* at 122–23.  The court submitted eight verdict forms, consisting of one guilty verdict and one not guilty verdict for each of the four charges.  The verdicts did not reference any specific acts or dates; rather, they were general verdicts that were distinguishable only by the type of sexual assault at issue (sexual contact for Counts 1, 3, and 4, and sexual intercourse for Count 2), and the count of the information.  For example, on Count 1, the court submitted the following verdict forms:

> We, the jury, find the defendant, Darryl Benson, guilty of first degree sexual assault of a child, sexual contact, as charged in the first count of the information.

> We, the jury, find the defendant, Darryl Benson, not guilty of first degree sexual assault of a child, sexual contact, as charged in the first count of the information.

*Id.*  After reading the verdict forms, the court instructed the jury to consider each charge separately:

> It is for you to determine whether the defendant is guilty or not guilty of each of the offenses charged.  You must make a finding as to each count of the information.  Each count charges a separate crime, and you must consider each one separately.  Your verdict for the crime charged in one count must not affect your verdict on any other count.

*Id.* at 123–24.

During its deliberations, the jury sent the following written question to the court:

> We need clarification
> of counts 3 + 4
> As to: Count 3
> occurred on 2/27/09?
> And if Count 4 occurred when? was any known date?

ECF No. 10-8 at p. 48 of 98.  The trial court discussed this question with both the prosecutor and defense counsel.  Counsel agreed that the judge could respond to the jury as follows: "Ladies and Gentlemen, Counts three and four are alleged to have

occurred between February 12, 2009, but before February 28, 2009." Tr. Vol. 7 at 3–4. The judge sent this answer, in writing, to the jury. *See* ECF No. 10-8 at p. 50 of 98.

The jury returned guilty verdicts on all three counts of sexual contact (Counts 1, 3, and 4) and a not guilty verdict on the one count of sexual intercourse (Count 2). The trial court sentenced Benson to a ten-year term on each count, to run consecutively, for a total of thirty years' imprisonment.

On direct appeal, Benson, now represented by appellate counsel, argued that he received ineffective assistance from his trial counsel, in violation of the Sixth Amendment. Benson alleged two broad categories of deficient performance by trial counsel. First, Benson alleged that the charges in the amended information were duplicitous—i.e., that they joined two or more separate offenses in a single count—and that therefore trial counsel should have objected to the information, jury instructions, and verdict forms on this ground and/or sought to correct the problems that stemmed from the duplicitous charges. Second, Benson alleged that trial counsel should have done a better job attacking the credibility of S.W. and her mother, Sonya. Benson claimed that, after he was arrested and jailed on the sexual assault charges, Sonya forged checks from Benson's individual checking account. Benson argued that trial counsel should have investigated this issue and used it to attack Sonya's credibility. Benson also argued that trial counsel should have impeached S.W. and Sonya with their prior inconsistent statements.

In Wisconsin, to raise a claim of ineffective assistance of trial counsel on direct appeal, a defendant must first file a post-conviction motion in the trial court. *See, e.g., State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 677–78 (Ct. App. 1996).

Benson filed such a motion and raised the two claims of deficient performance identified above. The trial court denied the motion without holding an evidentiary hearing. Benson then proceeded with his direct appeal to the Wisconsin Court of Appeals and raised the same two claims of ineffective assistance of trial counsel. The court of appeals rejected those arguments and affirmed his conviction. Benson then filed a petition for review in the Wisconsin Supreme Court, which was denied.

After the conclusion of his direct appeal, Benson filed a pro se collateral attack on his conviction in state court under Wis. Stat. § 974.06. In this motion, Benson argued that the trial court committed plain error by incorrectly answering the jury question regarding the dates of the charges in Counts 3 and 4. Benson pointed out that the court in its answer told the jury that both Counts 3 and 4 were alleged to have occurred "between February 12, 2009, but before February 28, 2009." In fact, however, this language applied only to Count 3. Count 4, as the trial court initially read it to the jury, did not contain the word "between" but instead alleged that the sexual contact occurred "after February 12, 2009, but before February 28, 2009." Tr. Vol. 1 at 22–23. Benson argued that the incorrect answer was prejudicial because it caused the time period of Count 4 to overlap with Count 1, which was alleged to have occurred *on* February 12, 2009. Since both Count 1 and Count 4 alleged charges based on acts of sexual contact that occurred at Benson's home, the jury was, in Benson's view, instructed to find him guilty on both Counts 1 and 4 if it found that he committed a single act of sexual contact at the home on February 12, 2009. Benson argued that his appellate counsel was ineffective in failing to raise this issue on direct appeal, either as an issue of plain error or through a claim of ineffective assistance of trial counsel.

Benson's pro se motion also raised other issues. The trial court denied the motion, and Benson appealed.

In the Wisconsin Court of Appeals, Benson was represented by counsel. His brief to that court argued that appellate counsel was ineffective in failing to challenge the court's response to the jury question, either as an issue of plain error or through a claim of ineffective assistance of trial counsel. The brief did not raise any of the other issues that Benson raised in his pro se motion in the trial court.

The Wisconsin Court of Appeals affirmed the trial court's denial of Benson's post-conviction motion. Benson, once again proceeding pro se, filed a petition for review in the Wisconsin Supreme Court, in which he raised only his claim based on the judge's response to the jury question. The Wisconsin Supreme Court denied the petition for review on March 7, 2016.

Benson, still proceeding pro se, filed his federal habeas petition on April 18, 2016. In his brief in support of his petition, which he filed on September 6, 2016, Benson raises a number of claims, some of which he did not present to the state courts through one complete round of review, and which he therefore procedurally defaulted. *See King v. Pfister*, 834 F.3d 808, 815 (7th Cir. 2016). However, Benson also raises the claims of ineffective assistance of counsel that he properly presented to the state courts, namely: (1) the counts alleged in the amended information were duplicitous, and therefore trial counsel was ineffective in failing to either demand that the counts be linked to specific acts that constituted the sexual contact or sexual intercourse or propose proper jury instructions and verdicts that cured the problems caused by the duplicitous nature of the charges; (2) trial and appellate counsel were ineffective in

failing to challenge the judge's response to the jury's question; and (3) trial counsel was ineffective in failing to cross-examine Sonya about the forged checks and in failing to impeach S.W. and Sonya with their prior inconsistent statements.

## II. DISCUSSION

### A.     Trial Counsel's Failure to Object to the Amended Information, Jury Instructions, and Verdict Forms

I first address Benson's claim that the charges in the amended information were duplicitous and trial counsel performed deficiently in failing to either object to the amended information on this ground or propose curative jury instructions and verdict forms.  The Wisconsin Court of Appeals resolved this claim on the merits, and therefore I may grant relief only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Benson's argument based on duplicity is raised indirectly through a claim of ineffective assistance of trial counsel.  To establish ineffective assistance of counsel, a defendant must show, first, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  Where a state court has denied a claim of ineffectiveness, a petitioner "must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under

§ 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). Rather, the petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Duplicity is the joining in a single count of two or more separate offenses. *State v. Lomagro*, 113 Wis. 2d 582, 586 (1983). The purposes of the prohibition against duplicity are: (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evidentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity. *Id.* at 586–87. The Third Circuit explained how duplicitous charges implicate the latter four of these concerns in *United States v. Starks*:

> One vice of duplicity is that a general verdict for a defendant on that count does not reveal whether the jury found him not guilty of one crime or not guilty of both. Conceivably this could prejudice the defendant in protecting himself against double jeopardy. Another vice of duplicity is that a general verdict of guilty does not disclose whether the jury found the defendant guilty of one crime or of both. Conceivably, this could prejudice the defendant in sentencing and in obtaining appellate review. A third vice of duplicity is that it may prejudice the defendant with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other . . . . Finally, there is no way of knowing with a general verdict on two separate offenses joined in a single count whether the jury was unanimous with respect to either.

515 F.2d 112, 116–17 (3d Cir. 1975) (footnote omitted).

Although duplicity is generally disfavored for the reasons stated above, prosecutors retain discretion to, in some instances, charge as a single offense multiple acts that could have been charged separately. *See Lomagro*, 113 Wis. 2d at 587–88. The Wisconsin Supreme Court has stated that "[i]f the defendant's actions in committing

the separate offenses may properly be viewed as one continuing offense, it is within the state's discretion to elect whether to charge 'one continuous offense or a single offense or series of single offenses.'" *Id.* at 587 (quoting *State v. George*, 69 Wis. 2d 92, 100 (1975)). The court noted that this discretion applies to sex offenses. *Id.* at 587–88. But the court also recognized that "this discretion to join offenses is limited by the purposes of the prohibition against duplicity." *Id.* at 588. The court stated:

> If a complaint joins several criminal acts which can properly be characterized as a continuing offense in one count and is challenged by the defendant on grounds of duplicity, the trial court must examine the allegations in light of the purposes of the prohibition against duplicity. Such a complaint may be found to be duplicitous only if any of these dangers are present and cannot be cured by instructions to the jury. If the complaint is found to be duplicitous, the state must then either elect the act upon which it will rely or separate the acts into separate counts.

*Id.* at 589.

In the present case, the amended information was not, on its face, duplicitous, in that no charge explicitly joined separate criminal acts into a single offense. However, at trial, evidence was introduced concerning multiple acts of sexual assault that occurred during the time period and location connected to each count. Count 1 alleged that Benson had sexual contact with S.W. on February 12, 2009, at his home. S.W. testified that, on that date, within a relatively short span of time, at the home, Benson put his penis in her mouth, touched her breasts and her "butt," and licked her vagina. Count 2 alleged that Benson had sexual intercourse with S.W. at the home on February 12, 2009. S.W. testified that, on that date, Benson put his penis in her anus twice within a short span of time in the kitchen. Tr. Vol. 3 at 32–34, 41. Count 3 alleged that, between February 12, 2009, and February 28, 2009, Benson had sexual contact with S.W. in his car. S.W. testified that, on multiple occasions after February 12, 2009, while they were

in the car, Benson touched her vagina, breast, and butt, and forced her to touch his penis, and that on one other occasion during this time period he forced her to put his penis in her mouth. Count 4 alleged that, after February 12, 2009, but before February 28th, 2009, Benson had sexual contact with S.W. at the home. S.W. testified about one instance of sexual contact at home after February 12, 2009 in detail, which consisted of Benson's touching her butt with his penis over her clothes and also touching her breasts over her clothes. But S.W. also testified that, during this time period, Benson made "oral and anal contact" with her six to seven times at the home. Tr. Vol. 4 at 66–67.

The prosecutor likely could have charged each distinct act of sexual contact or sexual intercourse that allegedly occurred on and after February 12, 2009, as a separate offense, which would have resulted in more than a dozen separate charges against Benson. However, as discussed above, a prosecutor has discretion to charge closely related offenses that could have been charged separately as a single offense. Here, the prosecutor exercised that discretion by grouping the alleged conduct into four offenses separated by date, type of assault (either contact or intercourse), and location (either the home or the car). Benson's trial counsel did not object to the prosecutor's exercise of discretion in this regard or propose jury instructions or verdict forms that were designed to ameliorate any prejudice that may have been caused by the prosecutor's joining multiple acts of sexual assault into single counts. Benson contends that his trial counsel's failing to object or propose curative instructions and verdict forms constituted ineffective assistance.

Whether trial counsel performed deficiently in failing to object to the prosecutor's decision to group multiple acts of sexual assault together and charge them as a single

crime turns on whether the prosecutor's decision created one of the five problems underlying the rule against duplicity. In the present case, Benson contends, primarily, that the duplicitous charges raised a problem with jury unanimity; that is, he contends that because there was evidence of more than one act of sexual assault associated with each count in the amended information, the jury might have found him guilty on a count even though they did not unanimously agree on which act or acts occurred during the time period and at the place alleged in that court.[5] The Wisconsin Court of Appeals rejected this claim, concluding that the jury instructions cured "any potential unanimity issue"[6] because they instructed the jurors that they had to unanimously agree on the specific acts that formed the basis for any guilty verdict on a count. *See* Opinion of May 8, 2012 at 9–10. The court of appeals quoted the unanimity instruction that the trial court read to the jury prior to their deliberations. That instruction provided:

---

[5] Benson also seems to contend that the amended information did not provide him with adequate notice of what he was charged with. However, the information was based on S.W.'s testimony at the preliminary hearing, and his trial counsel conceded at trial that there were no notice issues. Tr. Vol. 1 at 3. Moreover, Benson has not identified any way in which his defense would have changed had the amended information been worded differently, or if each count had been limited to a single specified act of sexual contact or intercourse. Thus, Benson has not shown that he was prejudiced by his trial counsel's failure to object on this ground, and the Wisconsin Court of Appeals reasonably rejected Benson's notice argument. *See* Opinion of May 8, 2012, at 8–9.

[6] It is at least arguable that the jurors did not have to unanimously agree on the specific act or acts underlying each sexual-assault charge, so long as they all agreed that Benson committed at least one act of sexual contact as alleged in each of Counts 1, 3, and 4, which were the counts on which they returned guilty verdicts. *See Lomagro*, 113 Wis. 2d at 590–98 (where conduct underlying single sexual-assault charge included separate acts and two types of penetration, all of which were defined as sexual intercourse, unanimity was achieved when jurors agreed a sexual assault was committed, even if it was possible that they did not agree on which acts and forms of penetration occurred). However, because the Wisconsin Court of Appeals assumed that unanimity on the specific acts was required, and because the respondent does not argue that unanimity on the specific acts was not required, I will not discuss this issue further.

> The defendant is charged with four counts of sexual assault. However, evidence has been introduced of more than one act, any one of which may constitute sexual contact or intercourse.
>
> *Before you may return a verdict of guilty, all twelve jurors must be satisfied beyond a reasonable doubt that the defendant committed the same acts and that the acts constituted the crime charged.*

Tr. Vol. 6 at 93–94 (emphasis added). The Wisconsin Court of Appeals concluded that this instruction "properly informed the jurors that they must agree that Benson 'committed the same acts' constituting the four counts charged." Opinion of May 8, 2012 at 10. It therefore found that trial counsel did not perform deficiently in failing to object to the amended information or propose different jury instructions or verdict forms.

Although Benson's pro se briefs are not entirely clear, I understand him to be arguing that the quoted jury instruction did not cure any potential unanimity issues because (1) the instruction did not carefully distinguish between sexual contact and sexual intercourse, and (2) the language of the instruction was insufficient to ensure jury unanimity on the specific acts.

As to the first issue, Benson focuses his attention on the first paragraph of the unanimity instruction, which states that "evidence has been introduced of more than one act, any one of which may constitute sexual contact or intercourse." Benson seems to contend that this language improperly instructed the jurors that they could find a single act to be both sexual contact and sexual intercourse, and that therefore the instructions permitted the jury to find him guilty of both sexual contact and sexual intercourse based on the same act, or to both find him guilty and acquit him based on the same act.[7] However, the first paragraph of the instruction did not have that effect. Rather, the

---

[7] This line of argument raises more of a double-jeopardy concern than a unanimity concern, but I will discuss it here because it concerns the unanimity instruction.

instruction merely informed the jury, accurately, that it had been presented with evidence of multiple acts, and that any of those acts *might be* an act of sexual contact or sexual intercourse. The jurors were given separate instructions on the meanings of "sexual contact" and "sexual intercourse," which they were instructed to apply to the evidence of the acts the defendant committed to determine whether any specific act that they believed occurred was an act of sexual contact or sexual intercourse. No part of the unanimity instruction stated or implied that the same act could constitute both sexual contact and sexual intercourse. Accordingly, the first paragraph of the unanimity instruction was proper.

As to the second issue, the unanimity instruction informed the jurors that, to return a guilty verdict on a count, all twelve of them had to agree "that the defendant committed the same acts and that the acts constituted the crime charged." If the jurors followed this instruction, which is presumed, *e.g., State v. LaCount*, 310 Wis. 2d 85, 100 (2008), they would have understood that they could not return a guilty verdict on a count unless they all agreed on the act or acts that constituted sexual contact (for Counts 1, 3, and 4) or sexual intercourse (for Count 2). Moreover, the counts of the amended information identified the relevant time periods and places for each charge. Thus, the jurors were instructed that, to return a guilty verdict on a count, they had to all agree that Benson committed a specific act of sexual contact or sexual intercourse during the time period and at the place alleged in that count. Or, at least, it was reasonable for the Wisconsin Court of Appeals to conclude that trial counsel did not perform deficiently in failing to propose a different unanimity instruction or to otherwise object to how the jury was instructed on unanimity.

Before leaving this topic, I also note that, based on the evidence at trial, it is highly unlikely that the jurors would have failed to agree on the specific acts that constituted each crime charged. The question for the jurors was whether to believe S.W.'s testimony or to believe Benson's testimony. Their returning guilty verdicts on all of the sexual-contact charges shows that they believed S.W. It is highly unlikely that the jurors would have failed to agree on which parts of S.W.'s testimony to accept. That is, it seems implausible that, for example, six jurors would believe that Benson touched S.W.'s breasts in the car while another six would not believe that he touched her breasts but would instead believe, unlike the first six, that he forced her to touch his penis in the car. There was simply nothing in S.W.'s testimony that would cause the jurors to disagree about which specific acts of sexual contact occurred.[8] Therefore, trial counsel did not perform deficiently in failing to propose different unanimity instructions or to object to the prosecutor's introducing evidence of multiple acts of sexual contact and intercourse on each count.

**B.      Ineffective Assistance of Trial and/or Appellate Counsel in Failing to Challenge Judge's Answer to Jury Question**

I next address Benson's argument based on the trial judge's answer to the jury's question concerning the time periods relevant to Counts 3 and 4. At the start of the trial, the trial judge told the jury the following:

> Count 3 alleges that the defendant, *between February 12th, 2009, and February 28th, 2009*, in a car where traveling began and ended in

_____

[8] Although the jury obviously had reasonable doubt that Benson had sexual intercourse with S.W. in the kitchen, there was a rational basis for the jury to doubt that part of her testimony but accept the rest. The jury could have been persuaded by defense counsel's argument that, if Benson really had anal intercourse with an eleven-year-old girl, there would have been evidence of an injury, such as a scar, yet the medical evidence at trial showed no injuries. Tr. Vol. 6 at 113–14.

> Milwaukee County, did have sexual contact with [S.W.], a person who had not attained the age of thirteen years.
>
> As to Count 4, it's alleged that *after February 12, 2009, but before February 28th, 2009*, at [Benson's home], in the City and County of Milwaukee, that the defendant did have sexual contact with [S.W.], a person who had not attained the age of thirteen years.

Tr. Vol. 1 at 22–23 (emphasis added). The emphasized clauses in the quotation above show that, at the start of the trial, the judge described the time periods relevant to these counts slightly differently. He said that Count 3 occurred "between" the two dates, and that Count 4 occurred "after" February 12th "but before" February 28th. However, in response to the jury's question during deliberations about these counts, the judge, with counsels' agreement, told the jury that both Counts 3 and 4 "are alleged to have occurred between February 12, 2009, but before February 28, 2009." The jury returned guilty verdicts on both of these counts.

On direct appeal, Benson's appellate counsel did not raise an issue concerning the judge's answer to the jury's question. However, after completing his direct appeal, Benson filed a state collateral attack challenging the answer. He argued that the court's inaccurately instructing the jury that Count 4 was alleged to have occurred "between" February 12th but before February 28th caused Counts 1 and 4 to overlap. Both of these counts alleged that Benson had sexual contact with S.W. in the home, and thus the dates of the alleged offenses were the only basis on which they jury could have distinguished the counts from each other. Count 1 was alleged to have occurred *on* February 12, 2009. Benson argued that by erroneously instructing the jury that Count 4 was alleged to have occurred *between* February 12, 2009 but before February 28, 2009, the court instructed the jury to return a guilty verdict on Count 4 if it found that Benson made sexual contact with S.W. in the home *on* February 12, 2009. Benson

argued that this created a double-jeopardy problem: the jury was instructed to find Benson guilty of two crimes if it found that he committed a single act of sexual contact at the home on February 12, 2009.  Benson also argued that it relieved the prosecution of its burden to prove that Benson committed a sexual assault in the home *after* February 12th, as required to secure a conviction on Count 4.   Benson argued that both his trial counsel and his appellate counsel were ineffective in failing to raise this issue during his trial and direct appeal.

The Wisconsin Court of Appeals rejected this argument.  Although the court gave several reasons for doing so, primarily it concluded that the use of the word "between" in Count 4 did not cause the time periods of Counts 1 and 4 to overlap.  The court seemed to recognize that the use of the word "between" in Count 4 could be thought to create an ambiguity over whether February 12th was included in the date range or excluded from the date range.  However, it concluded that this ambiguity was resolved when, during closing arguments, the prosecutor made clear that Count 4 was not alleged to have occurred on February 12, 2009, but rather during the period of time after February 12th and before Benson was arrested.  Opinion of Sep. 29, 2015 at 4–5.  The court therefore concluded that Benson did not receive ineffective assistance from either his trial or his appellate counsel.

Because the Wisconsin Count of Appeals adjudicated Benson's ineffective-assistance claim involving the jury question on the merits, I may grant relief only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or

"was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

I conclude that the Wisconsin Court of Appeals's decision was reasonable. Because the word "between," when used in connection with a date range, could reasonably be understood as either including the dates at either end of the range or excluding them, the judge's answer to the jury's question, when read in isolation, was ambiguous as to whether February 12, 2009 was included in the date range applicable to Count 4. However, based on what actually occurred during the trial, the jury would have understood that February 12th was excluded. As noted above, at the beginning of the trial, the court explained that Court 4 was concerned with conduct that occurred *after* February 12, 2009. Tr. Vol. 1 at 22–23. During the trial, the prosecutor elicited testimony from S.W. designed to make clear that Counts 1 and 4 concerned separate time periods. For example:

> Q    . . . [E]arlier this morning you also said there was a sexual assault in your home on February 12. You also said there was another time when an assault happened in your home. Do you remember saying that?
>
> A    Yes.
>
> Q    Was that before February 12th or after February 12th?
>
> A    It happened after.

Tr. Vol. 3 at 54; *see also* Tr. Vol 4 at 66–67; Tr. Vol. 5 at 6. Moreover, during closing arguments, the prosecutor made very clear that Count 1 covered just the date of February 12, 2009, while Count 4 covered a period of time that started after February 12, 2009:

He's charged with four crimes, four separate crimes. And here are the crimes. Count one charges him . . . with having sexual contact with [S.W.] on February 12th of this year at their home.

. . . .

Count four is also different. It's the same label, first degree sexual assault, but it charges him with having sexual contact with [S.W] at their home, *but not on February 12th*, between the period of time *after* February 12th and before February 28th when he was arrested.

Tr. Vol. 6 at 99–100 (emphasis added). In light of these consistent references to Count 4's covering the time period *after* February 12, 2009, the jury could not have construed the judge's answer to their question as meaning that they could convict on Count 4 based on an act of sexual contact that occurred *on* February 12, 2009. Further, the judge instructed the jurors prior to their deliberations that each count charges a separate crime, and that their verdict on one count could not affect their verdict on another count. *Id.* at 123–24. Having heard this instruction, the jurors would have understood that they were not to return guilty verdicts on *both* Counts 1 and 4 based on their finding that Benson committed a single act of sexual contact on February 12, 2009. Thus, the Wisconsin Court of Appeals reasonably determined that trial counsel did not render ineffective assistance in failing to object to the judge's answer, and that appellate counsel did not render ineffective assistance in failing to either challenge the answer as plain error or argue that trial counsel was ineffective in failing to object to the answer.

## C.     Trail Counsel's Failure to Adequately Attack S.W.'s and Sonya's Credibility

Benson's remaining non-defaulted claim is that trial counsel rendered ineffective assistance in failing to adequately attack S.W.'s and Sonya's credibility. With respect to both witnesses, Benson contends that trial counsel failed to impeach them with their prior inconsistent statements. Benson also contends that trial counsel should have

investigated his claim that Sonya forged checks from his individual checking account after he was arrested and then introduced evidence of the forgery at trial to show that Sonya had a financial motive to want him to remain in jail. Benson raised both aspects of this ineffective-assistance claim on direct appeal, and the Wisconsin Court of Appeals rejected them on the merits. Thus, I may grant relief only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 1. Failure to Impeach with Prior Inconsistent Statements

The Wisconsin Court of Appeals's discussed the impeachment aspect of Benson's claim as follows:

> [W]e are also unpersuaded that trial counsel's failure to impeach Sonya and S.W. regarding certain allegedly inconsistent statements prejudiced Benson. Benson contends that his trial counsel erred in failing to impeach the two witnesses with regards to the following statements:
>
> - Sonya allegedly told police that S.W. told her that Benson sexually assaulted her on February 25, 2009, but S.W. did not tell the two police officers any specific dates after February 12, 2009. S.W. also did not testify that she was assaulted on February 25, 2009, at trial or at the preliminary hearing.
>
> - S.W. told two police officers that there had been no contact on February 27, 2009, and did not testify to any contact on that date at the preliminary hearing. At trial, S.W. testified that Benson made her touch his penis on February 27, 2009.
>
> - S.W. told a police officer that on February 12, 2009, the first act was penis to mouth and then penis to anus. At trial, she testified to the opposite sequence of acts.

- S.W. testified at the preliminary hearing that all the assaults happened on the weekend. At trial, she testified that there were weekday assaults as well.

- S.W. testified at the preliminary hearing and told the police and her mom about one penis-to-anus act on February 12, 2009. At trial, she said there were two penis-to-anus acts on that date.

- At trial, in direct testimony, S.W. testified that there was no sexual contact when Benson drove her to school. She testified on cross-examination that there was penis-to-hand contact on February 13, 2009, in the car on the way to school

With respect to Sonya, we fail to see how her statement—that S.W. told her of a sexual assault that occurred on February 25, 2009—contradicts S.W.'s testimony. S.W. testified at trial that Benson assaulted her six or seven times after February 12, 2009—consistent with Sonya's testimony that S.W. told her of an assault on February 25, 2009. We fail to see how a twelve-year-old sexual assault victim's failure to testify to a specific date of abuse, conflicts with her mother's testimony that at one time closer in time to the assault, the victim was able to provide a specific date.

Even more uncompelling is Benson's assertion that his trial counsel improperly failed to impeach the testimony of S.W. with the allegedly prior inconsistent statements set forth above. Like many young sexual assault victims, S.W. could not remember a variety of specifics concerning her various encounters with Benson. Throughout the trial, both the State and defense counsel impeached S.W. with her prior statements to the court and to law enforcement to the extent that those statements were inconsistent with her trial testimony. Moreover, the jury was also aware of those inconsistencies that occurred within the trial itself. Trial counsel's failure to pursue each and every inconsistency made by a young sexual assault victim does not undermine our confidence in the outcome of the trial, particularly when many of those inconsistencies were made within the course of the trial and were obvious to the jury.

Opinion of May 8, 2012 at 13–14 (citation omitted).

The Wisconsin Court of Appeals's discussion of this aspect of Benson's claim was thorough, and the court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law. Many of the inconsistencies in S.W.'s testimony were in fact brought out during the trial. For example, while cross-examining S.W., defense counsel highlighted the inconsistency

between her trial testimony and what she previously told police regarding the order in which Benson committed the penis-to-mouth and penis-to-anus assaults. Tr. Vol. 4 at 77–78. Moreover, S.W.'s own testimony made clear that she was not very sure about the order in which many of the alleged sexual acts occurred or about the exact dates on which they occurred. Trial counsel's pointing out every last inconsistency in her testimony would not have appreciably aided Benson's defense. This is especially true given that S.W. was a minor and the jurors would likely not have expected her to recall Benson's pattern of abuse with perfect clarity. *Cf. State v. Fawcett*, 145 Wis. 2d 244, 254 (Ct. App. 1988) ("Child molestation often encompasses a period of time and a pattern of conduct. As a result, a singular event or date is not likely to stand out in the child's mind."). Accordingly, Benson is not entitled to relief on this aspect of his claim.

## 2. Failure to Cross-Examine Sonya About Forged Checks

Benson also faults trial counsel for failing to investigate his claim that Sonya forged checks and made other withdrawals from his individual bank account immediately following his arrest on the sexual-assault charges. Benson contends that if the jury had learned that Sonya withdrew money from his account while he was in jail, it might have thought that Sonya was lying about the sexual assaults (and also convinced S.W. to lie about having been assaulted) in order to ensure that Benson remained in jail and was unable to stop her from continuing to withdraw funds from his account. On direct appeal, the Wisconsin Court of Appeals determined that because this line of attack on Sonya's credibility would not have been fruitful, trial counsel did not perform deficiently or prejudice Benson's defense by failing to investigate and pursue it. Opinion of May 8, 2012 at 12.

The Wisconsin Court of Appeals did not unreasonably apply *Strickland* with respect to this issue. The idea that Sonya would convince her eleven-year-old daughter to lie about having been sexually assaulted by Benson on multiple occasions, including by anal penetration, so that Benson would be arrested and unable to stop her from withdrawing money from his bank account is highly implausible. Instead of pursuing this line of attack on Sonya's testimony, defense counsel cross-examined Sonya more effectively by suggesting that she was drunk and high at the time she received Benson's supposed "pocket dial" call and therefore failed to understand that Benson was directing his sexually explicit comments towards her rather than S.W. *See* Tr. Vol. 4 at 46. He also pointed out during cross that Sonya did not report Benson's sexual abuse to the police immediately after S.W. supposedly told her about it. *Id.* at 57–58. These lines of cross-examination were more likely to produce reasonable doubt about whether Sonya and S.W. were telling the truth than cross-examination about Sonya's having withdrawn money from Benson's account immediately after his arrest. At the very least, it was reasonable for the Wisconsin Court of Appeals to conclude that trial counsel did not perform deficiently in failing to pursue the financial issue and that Benson was not prejudiced by trial counsel's failure to do so. Accordingly, Benson is not entitled to relief on this claim.

## D.    Procedural Default

Besides the issues discussed above that Benson properly presented to the state courts, Benson also raises several other issues in his habeas briefs that he did not raise either during his direct appeal or during his appeal of the trial court's denial of his state collateral attack. These issues include additional claims of ineffective assistance of trial

counsel and a claim that he was held in custody without a probable-cause determination in violation of *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). Benson did present at least some of these issues to the Wisconsin trial court when he initiated his state collateral attack, but after the trial court denied relief he did not pursue those issues on appeal to either the Wisconsin Court of Appeals or the Wisconsin Supreme Court. Rather, on appeal, he pursued only his claims relating to the judge's answer to the jury's question regarding the dates of Counts 3 and 4.

"[F]ederal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)). This requirement has two components: the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction, and the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules. *Id.* "In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default . . . ." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).

In the present case, Benson has procedurally defaulted the claims that he did not present to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. A procedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default, or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice. *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013). Here, Benson attempts to show cause for

his default[9] by arguing that the attorney that he retained to represent him during his appeal of the trial court's denial of his state collateral attack was himself ineffective in failing to raise the claims that are now defaulted. *See* Reply Br. at 13, ECF No. 22. However, "[b]ecause a prisoner does not have a constitutional right to counsel in state postconviction proceedings, ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default." *Davila v. Davis*, __ U.S. __, 137 S. Ct. 2058, 2062 (2017). Moreover, even if Benson had a right to the effective assistance of counsel in his postconviction proceedings, he has not shown that his postconviction counsel performed deficiently in failing to raise the now-defaulted claims. To the contrary, Benson has submitted a letter from his counsel in which counsel explains to Benson that he would not raise one of Benson's now-defaulted claims (the *Riverside* claim) because the claim had no merit. *See* ECF No. 22-1. Counsel's analysis of that claim, as stated in the letter, appears to be correct. Accordingly, I will not set aside Benson's procedural default of the claims that he did not present to the state courts through one complete round of review.

**E.    Motions**

Finally, I note that Benson has filed various motions to expand the federal habeas record and other motions seeking miscellaneous forms of relief. *See* ECF Nos. 19, 23, 24, 25, 28 & 31. None of these motions has merit, and I will deny them without further discussion.

## III. CONCLUSION

---

[9] Benson has not attempted to satisfy the miscarriage-of-justice exception.

For the reasons stated above, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

**IT IS FURTHER ORDERED** that Benson's motions to expand the record and for other forms of relief (ECF Nos. 19, 23, 24, 25, 28 & 31) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2017.


/s Lynn Adelman
LYNN ADELMAN
District Judge